Welch, J.
This is a Summary Process action tried in a jury waived session agreeable to St 1996, c. 358, §2, as amended by St 2000, c. 142, §2. The judge found for the plaintiff on the complaint for possession and for rent in the amount of $5,000; the court found for the defendants as plaintiffs in counterclaim, awarding damages in the sum of $2,940. Agreeable to G.L.c. 239, §8A, the judge set off the award against the rent found to be due, with a net award to the plaintiff in the sum of $2,940. No appeal is made to the amount awarded. The judge ordered that if the defendants (tenants) pay within seven days the amount due, judgment would enter for the tenants for possession. If not paid, judgment was to enter for the landlord. It is noted that tenants failed to pay the amount ordered.
The tenants claim to be aggrieved by the court’s disposition of certain requests for rulings.[3] We determine there was no prejudicial error.[4]
The trial court issued findings of fact which are binding upon the Appellate Division unless “clearly erroneous.” Findings of fact are not “clearly erroneous” unless the Appellate Court, on the entire evidence, is left with a firm conviction that a mistake has been made. Capital Bank & Trust Co. v. Richman, 19 Mass. App. Ct. 515, 519 (1985).
The defendants (tenants) rented and resided in an apartment in Randolph for nine years. From the outset, tenants complained to landlord about a moisture and sewerage odor problem due to the fact that other dryers in the building were venting through their bathroom. Although the landlord sent someone to inspect the condition, the problem persisted to the present The tenants were compelled to run the fan in the bathroom and keep the bathroom door closed at all times. On October 30, 2000, the tenants renewed their complaint by writing the landlord requesting corrective action. There were also problems caused by moisture, with the floors in the kitchen, bathroom and living room. About a month later, the ten *110 ants complained of an ant infestation. On November 22, 2000, there was a fire in the bathroom caused by the fan. A Board of Health inspection three days later documented the ant infestation, the surface of the kitchen floor and the bathroom ventilation issues. A follow up inspection in January of 2001 indicates that the infestation issue, the kitchen counter issue, and the bathroom ventilation issue continued unabated. At the date of trial the health agent indicated there were no sanitary code violations in the apartment The court found that the landlord was aware of the ventilation problem since the inception of the tenancy. The court determined an abatement of $25 per month for 108 months, plus $240 for the ant infestation was due the tenants from the landlord. The court determined that the tenants failed to sustain their burden on the counterclaim for breach of quiet enjoyment or violation of c. 93A The court also decided that the landlord had rebutted any claim of retaliatory eviction.
1. The first request for ruling is that the evidence does not warrant a finding for the plaintiff, and that a finding for the defendants is required. There was no error in the denial of this request because the plaintiff established a prima facie case. The fact that the court determined there were breaches of the warranty of habitability does not preclude a finding that the plaintiff has proven a prima facie case. G.L.c. 239, §8A provides, in part, that
... There shall be no recovery under this chapter if the amount found by the court to be due the landlord equals or is less than the amount found to be due the tenant or occupant by reason of any counterclaim or defense under this section. If the amount found to be due the landlord exceeds the amount found to be due the tenant or occupant, there shall be no recovery of possession if the tenant or occupant, within one week after having received written notice from the court of the balance due, pays to the clerk the balance due the landlord, together with interest and costs of suit, less any credit due the tenant or occupant for funds already paid by him to the clerk under this section.
This statutory provision provides the framework used by the judge in determining the issue of possession and the net amount due plaintiff. The breach of warranty of habitability constitutes a total or partial defense to the landlord’s claim for rent owed during the period of such breach. Boston Housing Authority v. Hemingway, 363 Mass. 184, 186-187 (1973). Thus, the breach of warranty of habitability does not preclude a determination of a prima facie case for possession by the landlord. Id. at 187 (judge’s finding that tenants Med to comply with G.L.c. 239, §8A and were foreclosed from asserting breach of warranty of habitability as a defense).
2. The defendants, as plaintiffs in counterclaim, sought a ruling that they were entitled to recover on the counterclaim for interference with quiet enjoyment The judge denied this request and decided to dismiss that counterclaim. The request as framed was the equivalent of a request that a finding for the defendants on their counterclaim was required as a matter of law. Patterson v. Ciborowski, 277 Mass. 260, 267 (1931). Barely can it be ruled as a matter of law that a party with the burden of proof has established his or her case based in whole or in part on oral testimony. McDonough v. Metropolitan Life Ins. Co., 228 Mass. 450, 452 (1917). The implied covenant of quiet enjoyment is a promise that during the terms of the tenancy, the tenant shall not be disturbed by the lessor or anyone claiming under him or by anyone claiming paramount title. Rahman v. Federal Management Co., 23 Mass. App. Ct. 701 (1987). There was no error in the denial of this request for ruling.
3. The defendants, as plaintiffs in counterclaim, sought a ruling that they were entitled to recover on their counterclaim based upon reprisal. G.L.C. 186, §18 provides that a threatened or actual reprisal against a tenant for engaging in a pro *111 tected activity is prohibited. A reprisal is a retaliatory act by landlords against tenants for exercising their legal rights under the housing laws. A principal enforcement mechanism is the provision of a rebuttable presumption triggered by receipt of a notice of termination of tenancy within six months after report of a health violation or the commencement of proceedings or obtaining relief against a landlord for housing code violations. Schofield v. Berman & Sons, Inc., 393 Mass. 95, 108-115 (1984). The statute, in haec verba, extends to “reprisals” other than those acts which give rise to the rebuttable presumption. Id. at 111, 112. In the Schofield case, the court held that the landlord’s refusal to allow tenant to remain as a tenant at will following the expiration of her lease when he had permitted other tenants to remain and the motive being retaliatory for reporting to the rent control board was within G.L.c. 186, §18. The trial judge found that defendant had proven by a preponderance of the credible evidence that a principal motive in refusing the tenant to remain as a tenant at will was the fact that she reported the landlord’s unlawful conduct to the rent board. Since reporting unlawful conduct to the rent board was not among the activities enumerated in G.L.c. 186, §18, the judge reasoned that a refusal to grant a tenancy at will is not a denial of a recognized right Tenants who complain of violation of any municipal ordinance or state law which are designed to regulate residential housing are within the protection and scope of G.L.c. 186, §18. Thus, reporting of violations of rent control ordinances was a tenant activity protected by the statute. Id. at 111.
The statute provides that the presumption of reprisal may be rebutted only by clear and convincing evidence that the landlord’s action was not a reprisal. The evidence suggests the landlord had sufficient independent justification for seeking to evict the defendants. The judge found that the landlord had rebutted any claim of retaliatory eviction. He did not make any subsidiary findings on this issue. It is undisputed that many of the conditions amounting to breaches of warranty of habitability existed from the very inception of the tenancy and were known to exist by both parties for the duration of the tenancy, a period of 9 years. It is also clear that 6 months rent was overdue at trial amounting to $5,520. The venting issue was a serious one and proved most resistive to various remedial measures attempted. During most of this period, the relationship between the landlord and tenants was amicable. There was correspondence between the parties in which the tenants thanked the landlord for addressing concerns relative to the venting. The landlord testified that in order to make the structural changes necessary to fix the problem, the tenants would have to vacate the premises. The judge commented that the landlord had acted in good faith respecting making a number of changes to make the unit more habitable. While “good faith” is not a defense to the counterclaim for breach of warranty of quiet enjoyment, see Lowery v. Robinson, 13 Mass. App. Ct. 982 (1982), the statute implicitly makes it a consideration in rebuttal of the presumption of retaliation.
If a judge selects one of several permissible options as to factual conclusions inferable from the evidence, the judge’s choice will not be deemed “clearly erroneous.” W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 751 (1993). There was evidence that the floors of the apartment were very uneven; that they had a “sag” or “sink hole” (to adopt the characterization by the defendants). A fire caused by the overheating of the ventilation fan had caused significant damage to the apartment Although the tenants did not vacate, a portion of the ceiling and walls were waterlogged due to water used by the fireman to extinguish the fire. The floors were saturated with water, causing further sagging. There were deep cracks in the subfloor. There was a gap where the floor had pulled away from the wall. There was a large crack in the living room extending from the ceiling all the way to the subfloor. This evidence would warrant an infer *112 ence that there is a serious doubt as to the structural integrity of the building which could be remedied only if the tenants vacated the unit In Brown v. Sewell, 14 Mass. App. Ct. 970 (1982), it was held that there was clear and convincing evidence rebutting the presumption of reprisal against plaintiff for having reported code violations to authorities where the landlord came to the conclusion reluctantly but honestly the only way to unburden himself of the recurring task of patchwork repairs was to have the tenant vacate so that substantial rehabilitation might be effected. Id. Here, as in Brown, there was a significant history of responding to numerous complaints promptly with good faith attempts to remedy the problems without retaliatory action.
4. The court denied defendants’ request for ruling that on all the evidence the plaintiff’s conduct constituted one or more deceptive acts or practices. The judge might have found that certain conduct by the landlord was a violation of G.L.c. 93A, §2, but he was not required to do so. Not every unlawful act is automatically an unfair or deceptive act or practice in violation of G.L.c. 93A, §2. Mechanics Natl. Bank v. Killeen, 377 Mass. 100, 109 (1979); Levings v. Forbes & Wallace, Inc., 8 Mass. App. Ct. 498, 504 (1979). See Spaulding v. Young, 32 Mass. App. Ct. 624 (1994) (Improper installation of kitchen cabinet in residential apartment which fell on plaintiff and which was in violation of State Sanitary & State Buildings Codes did not compel a finding of unfair and deceptive acts or practices). The request as framed, implied that the court was obliged to find a violation of 93A. See Butler v. Cromartie, 339 Mass. 4, 5-6 (1959). The court was entitled to deal with the request as worded. Id. at 5-6.
5. The tenants claim to be aggrieved by the court’s refusal to rule that each tenant is individually entitled to an award of damages for breach of warranty of habitability. Appellants cite Leardi v. Brown, 394 Mass. 151, 165 (1985) as authority for this proposition. At the outset, it appears that the court did award the defendants damages for breach of warranty of habitability. We do not construe Leardi v. Brown as requiring a separate assessment of damages for each tenant when two or more persons occupy the same dwelling unit The joint award is sufficient Leardi was a class action on behalf of a group of tenants who occupied different dwelling units. Contrary to appellants’ assertion, the court held that damages are to be awarded on the basis of each leasehold sustaining injury. Id. at 165.
6. The tenants maintain the judge erred in refusing to rule that the evidence did not warrant a finding that the plaintiff tendered a reasonable settlement. G.L.c. 93A §9(3) exempts one seeking relief (i.e. the defendants as plaintiffs in counterclaim) from the requirement of a demand letter. The statute goes on to provide that the respondent (i.e. the party from whom relief is sought) may make a written offer of relief and paying the rejected tender into cour t as soon as practicable after receiving notice of the claim for relief, the counterclaim in this case.
7. The appellants contend that the judge erred in permitting a Board of Health inspector to give his opinion whether certain conditions found constituted a violation of a code. It was arguably error to permit the inspector to testify whether a given condition constituted a code violation. Berry v. Medeiros, 369 Mass. 836, 842 (1976) (Improper to allow inspector to give his opinion interpreting the code and its effect on facts to be found by the jury). Compare Eagan v. Marr Scaffolding Company, 14 Mass. App. Ct. 1036 (1982) (Expert testimony applying terms in the Rules & Regulations might assist jury; no abuse of discretion in admitting such testimony); Sullivan v. First Financial Corp., 409 Mass. 783, 798 (1991) (Not an abuse of discretion for judge to permit accountant to testify that a bank could not have qualified for Subchapter 8 status under Internal Revenue Statute & Regulations). We are persuaded that the error, if it became error, was harmless beyond a doubt This was a jury-waived trial. The appropriate Regulations and CMRs were available to the court, and appellants make no argument on appeal that the regula *113 tions and code provisions were not applied correctly.
We are unpersuaded by any other assignments of error which essentially entail a reargument of other issues previously discussed in this appeal.[5]
We determine that there was no prejudicial error and dismiss the appeal.
So ordered.

 The plaintiff moves, pursuant to Rule 1:28 of the Appeals Court Rules, for a summary disposition of the appeal, claiming that no question of law is presented. Suffice it to say that Rule 1:28 is not applicable to proceedings before the Appellate Division. The Dist/Mun. Cts. R A D. A have no comparable provision.

 We note an error in calculation in the net amount due plaintiff. Pursuant to Rule 60(a), Mass. R Civ. R, the clerk should correct this error.

 Because of our determination as to the issue of quiet enjoyment, we need not consider the request for counsel fees. See Yorke Management v. Castro, 405 Mass. 17 (1989).